## STATE v. CHUMBLEY et al.—181 S. W. (2d) 382.

Middle Section.   April 29, 1944.

Petition for Certiorari denied by Supreme Court, July 1, 1944.

378

Ernest F. Smith, Assistant Attorney General, Roy H. Beeler, Attorney. General, and Robert L. Keele, of Manchester, for plaintiff in error.

John A. Chumbley and J. Davis Wooten, both of Manchester, for defendant in error.

HOWELL, J. ▮ We are presented in this case with a motion by the defendant, the appellee John A. Chumbley, to strike the bill of exceptions and affirm the judgment of the trial Court upon a number of grounds. Since this motion was filed parts of the technical record omitted from the original transcript have been supplied and filed and for this reason we do not deem it necessary to discuss the motion.

It is accordingly denied.

This is an appeal in error by the State of Tennessee from a judgment of the Circuit Court of Coffee County

in a condemnation case in which that Court awarded the defendant John A. Chumbley $4,500 for twenty-five acres of land near Tullahoma, Tennessee, which was appropriated by the State as a part of the area designated for use by the War Department of the United States Government as an Army Center known as Camp Forrest.

The jury of view had fixed the value of the land taken at $7,000. The State appealed and the case was tried de novo in the Circuit Court and $4,500 was awarded as the fair value. The land was appropriated in October, 1940 and the amount of the award bears interest from October 1, 1940. The costs were ordered paid by the State.

The State has appealed in error to this Court and has assigned six errors, three of which are that the verdict of the jury is not justified by the evidence and three are directed at the failure of the Court to charge two special requests and to strike certain evidence from the record. The assignments are:

"The Trial Court erred in not setting aside the verdict of the jury and granting the State a new trial for the following reasons:

"I. The jury verdict awarding appellee the sum of $4,500.00 for the boundary of land appropriated is not supported by any competent, relevant or material evidence.

"II. The verdict of the jury assessing the value of appellee's land at $4,500.00 is against the preponderance of the competent and material evidence.

"III. The verdict of the jury assessing the value of Appellee's land at $4,500.00 is so excessive as to show passion, prejudice and caprice on the part of the jury.

"IV. The trial court erred in not charging the jury the State's special request No. 5, which was timely sub-

mitted to the court by counsel representing the State, said request being as follows:

" 'I charge you that all the competent, material or relevant evidence of this case shows that this tract of land was included in the original Camp Area and I charge you will not consider any increase in value caused by the coming of the Camp.'

"V. The trial court erred in not charging the jury the State's Special request No. 6 which was duly submitted to the court by counsel representing the State, said request being as follows:

" 'I charge you that you will not consider the testimony of the defendant's witnesses King and Morton because their evidence of value is based on a speculative value or a raise in value caused by the establishment of the improvement, the camp, for which the land was taken and of which it was an original part.'

"VI. The court erred in not striking the testimony of Appellee's witness Morton upon motion made at the time said witness testified, because such testimony was not based on any fact and the value placed on said land by the witness was speculative and on the assumption that Appellee's land was not in the area first established as Camp Forrest."

The value of the land condemned must be fixed as of the time it is appropriated for the public use and neither the owner nor the condemnor will be allowed to speculate as to its value by reason of future developments on account of the taking.

The testimony of two of the witnesses for the appellee, Bolling Morton and Marshall King, was excepted to by the appellate and a motion was also made to strike this evidence from the record. It was contended that the testimony of these two witnesses was based upon the as-

sumption that the land appropriated was not within the Camp Forrest area as first established. There was a controversy as to this question of fact and evidence introduced upon the subject. The Court charged the jury in this connection as follows:

"Now, there does arise one question as to the value at that time which is proper to submit to you gentlemen and which I have heretofore submitted to you. Certain witnesses have testified here and have given their opinion as to the value of the property in October, 1940, and they have testified that their valuation was fixed, to some extent at least, upon the fact that land had increased in value in that section on account of this improvement, this camp. Now, a motion was made by the petitioner in this case to strike out that testimony from the jury. Two witnesses in this case testified to that. I call to mind now witnesses Morton and King who, in their opinion, fixed the value of the property at that time, but stated that to some extent that value was based upon the fact that the property had increased in value on account of the coming of Camp Forrest.

"Now, this rule of law—its application at least—must address itself to you. If it appeared to the court and there was no contradiction of the fact that this land was in the original Camp Forrest area as designated and intended by the Government and as set out in the petition, to wit, that this defendant's property was in there, then it is a principle of law when that is done, and when the announcement is made of that fact, when it becomes known that a public improvement is going to be made, and when it becomes known what property that improvement is to take in, that the State or Government that is going to make that improvement can't be penalized by the

increase arising by reason of that improvement in valuing that particular property.

"In other words, if this Camp Forrest area took in this defendant's land originally when the announcement was made, or it became known that it was going to take in this Chumbley land involved in this case, then it must take it in at the value of the land at that time. The fair, just compensation would mean the value at that time, not another value that might be added to it later on by going up in price due to the erection of this improvement which the State or Federal. Government is going to make. In other words, the State says, 'I am going to build a camp here and take in the defendant Chumbley's land and all the rest of the land', if the State says that and then that land goes up in price, the State can't be charged with that going up because the defendant didn't lose anything in a case of that kind. The increase in value was brought about by the improvement of the Government or State that seeks to take the property.

"That is contested in this case. That rule of law does not apply if the land was not within the original camp site. If the State comes in and says, I will take 1,000 acres of land here and sets it out, 'to make this improvement', and then there is other land later on that the State decides to take and it has increased in value in the meantime, then the State must pay the increase. But if that land was originally in there, it must not pay the increase in value caused by the coming of the improvement. That question is raised in this case. The State insists that the Chumbley property was a part of the original camp area and that it embraced the Chumbley land. Now, if that is true, the testimony of witnesses Morton and King in this case—if that is shown by the preponderance and weight of the proof, the testimony of Morton and King must not

be considered by you for any purpose because their testimony does say that to some extent the value of the land was affected and increased by the coming there of that camp. They were not asked what the value of it would be irrespective of that. That could have been done, but was not, hence the testimony as it stands as to those two witnesses must not be considered by the jury at all if you find by the preponderance and weight of the proof that this original camp area as originally designated and set out by those in charge embraced and took in this Chumbley land. That is a controverted matter. The State says that is the way of it, that it was included in the original camp area. The defendant on the other hand, says 'No, that was not embraced in the original camp area, that was a later idea'. That the Government later conceived the idea that it would take in this Chumbley land, and the defendant insists that the preponderance and weight of the proof does not show that this was a part of the original camp area. If you find that insistence of the defendant to be true, or if you find by the weight and preponderance of the proof that it was not a part of the original camp area as designated by the State or Government, then the defendant would be entitled to any increase in value of the land caused by the coming of the camp. You are to determine how that is. If there was no controversy about that matter of fact, then the court would have sustained this motion entirely, or overruled it entirely, but as it is he must charge it to you to determine whether you may consider the testimony of those two witnesses.''

We think the trial judge fairly and properly ruled on this question and that the charge covered the matter referred to in the special requests and they were properly denied.

The amount of the recovery or just compensation to the appellee for the land taken is the only question before the Court.

In the case of Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn., 147, on page 153, 17 S. W. (2d), 22, on page 23, 65 A. L. R., 440, the Court said:

"Under our statutes and system the proceedings in condemnation contemplate a wide scope of inquiry, with flexible limitations in the fixing of a fair and reasonable value. So, as the first step, a jury of view is provided for, to go informally and without restricting instructions upon and over the property, to inspect it, and 'view' it, in all its bearings, relations, and aspects, free to make all inquiries and investigations which may tend to throw light on its true present value and report what to them seems fair and just. Then follow on appeal the more formal proceedings in the circuit court, but again it is a jury of 12 men chosen from the community, free from interest or prejudice, who are to have submitted to them all facts which might reasonably be expected to affect the valuation which a willing purchaser might agree upon when dealing with a willing seller. The door is opened wide to both parties to the controversy to submit all facts deemed by either pertinent to the issue, and objections going to pertinency and relevancy should be sustained only in extreme and plain cases. The jury, composed of 12 minds, should be given wide latitude, differing, as they must, as to details respecting controlling or influential elements of value."

It was insisted for the appellee that his land was enhanced in value by reason of the fact that it was located near the city of Tullahoma, was valuable as a site for the manufacture of brick, as the soil was especially adopted to brick making and that it was desirable also as a

residential section on account of its nearness to the Tulla-homa plant of the General Shoe Company. All of these matters were before the jury. The trial Judge fairly and fully charged the jury as to the method of arriving at a fair value for the property. The trial Judge and the jury saw the witnesses and heard the evidence and the jury arrived at a valuation of the property which was approved by the trial Judge. It was for the jury to pass upon the credibility of the witnesses and the weight to be given their testimony after considering not only the opinions of the witnesses but also their qualifications to express opinions and the facts upon which they are based.

We think that in cases of this character the Court should be slow to set aside verdicts of a jury unless it appears that a substantial injustice has been done or a wrong theory of determining the value of the land was adopted by the trial Court. In this case the question as to whether or not the appellee's land was within the original area of Camp Forrest was one of fact and the Court instructed the jury not to consider the testimony of the two witnesses, Morton and King, if they believed that the land was within this original area. This was not error. It was proper for the Court to leave this disputed question of fact to the jury.

We have carefully examined the entire record and are of the opinion that there was material evidence to support the verdict of the jury and while there was conflicting testimony as to the value of the land taken, there were witnesses who testified to higher actual value than the amount fixed by the jury and we cannot say that the verdict approved by the trial Judge indicates passion, prejudice or caprice or that it is excessive.

It results that the assignments of error are overruled and the judgment of the Circuit Court affirmed and an order will be entered granting the appellee a judgment against the State of Tennessee for the sum of $4,500.00 and interest from October 1, 1940 and all the costs of the cause.

Felts and Hickerson, JJ., concur.